**Entered on Docket
March 30, 2020**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: March 30, 2020

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re <br><br> PG&E CORPORATION, <br><br> - and - <br><br> PACIFIC GAS AND ELECTRIC COMPANY, <br><br> Debtors. | Bankruptcy Case No. 19-30088-DM <br><br> Chapter 11 <br><br> (Lead Case) <br><br> (Jointly Administered) |
| ANTHONY GANTNER, individually and on behalf of all those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PG&E CORPORATION, a California Corporation, and PACIFIC GAS & ELECTRIC COMPANY, a California Corporation, <br><br> Defendants. | Adversary Case No. 19-03061-DM |

**MEMORANDUM DECISION ON DEBTORS' MOTION TO DISMISS AND STRIKE**

On February 25, 2020, this court held a hearing on the motion (the "MTD") of defendants and debtors PG&E Corporation

-1-

and Pacific Gas and Electric Company ("Utility") (collectively, "Debtors") to dismiss and to strike the class action complaint filed against them by plaintiff Anthony Gantner ("Plaintiff"), individually and on behalf of all those similarly situated. Upon due consideration of the MTD (A.P. dkt. 7), Plaintiff's opposition (A.P. dkt. 16), Debtors' reply (A.P. dkt. 18), and the statement (A.P. dkt. 19) filed by the California Public Utilities Commission ("CPUC") in support of the MTD, the court will grant the MTD and dismiss this adversary proceeding without leave to amend, as it is preempted by California Public Utilities Code § 1759.

I.   INTRODUCTION

Plaintiff seeks damages for losses he incurred as a result of certain planned blackouts, otherwise known as public safety power shutoff ("PSPS") events, implemented by PG&E in October and November 2019 to mitigate wildfire danger caused or exacerbated by projected high winds.  He seeks class certification for other similarly situated customers or users who lost power during the scheduled PSPSs.

In their MTD, Debtors contend that (1) this court lacks subject matter jurisdiction over the claims asserted by Plaintiff (Fed. R. Civ. P. 12(b)(1)) and (2) Plaintiff has failed to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6))(both made applicable by Fed. R. Bankr. P. 7012); and (3) Plaintiff's class claims fail on predominance or ascertainability grounds (Fed. R. Civ. P. 23(a), made applicable by Fed. R. Bankr. P. 7023).  Because Plaintiff's claims are preempted by California law and fall exclusively within the

-2-

regulatory authority of the CPUC, the court will grant the MTD without the necessity of addressing whether the class claims are certifiable under Fed. R. Civ. P. 23(a).

II. THE COMPLAINT

Plaintiff asserts a single count of negligence against Debtors and seeks damages arising from losses caused by the PSPS events in October and November 2019:

> Plaintiff and the Class were without power for many days, in some cases up to 17 days total and upwards of 10 days in a row. Plaintiff was without power himself for 8-9 days total and up to 5 days in a row. As a result, Plaintiff and the Class suffered various losses including loss of habitability of their dwellings, loss of food items in their refrigerators, expenses for alternate means of lighting and power, such as candles, flashlights, batteries, and gas generators, loss of cell phone connectivity, dangerous dark conditions, lack of running water, and loss of productivity and business.

A.P. dkt. 1, ¶ 3. Because of this loss of power, Plaintiff seeks "compensation for [his and other potential class claimants'] losses and also injunctive relief to require [Utility] to properly maintain and inspect its power grid." *Id.* at ¶ 4.

The complaint (as well as the opposition to the MTD) emphasize that Plaintiff and the potential class members are not suing the Utility for imposing the blackouts or PSPS events. In fact, Plaintiff alleges no negligence in the implementation of the five blackouts that were a result of the PSPSs. Instead, he faults the Utility for failing to maintain its transmission system in such a manner that no such blackouts would be necessary. For example, paragraphs 10-62 of the complaint

allege and describe the Utility's "abominable" safety record, its "criminally negligent maintenance of its power lines," its failure to safely design, operate and maintain the power system, and its "corporate culture" that purportedly resulted in "numerous and increasingly deadly fires." Plaintiff was not a victim of these fires. Rather, he alleges that he was a victim of the subsequent, post-petition PSPSs, which he contends were necessary because of the Utility's prior failures to safely maintain its power system. *Id.* at ¶¶ 63-79. As Plaintiff acknowledges in his opposition to the MTD:

> Plaintiff here does not allege that PG&E, in deciding to conduct the public safety power shutoffs at issue, failed to comply its 2019 Wildfire Safety Plan or with the CPUC's guidelines. Rather, Plaintiff generally alleges that the Utility's negligent design and maintenance of its facilities for many years resulted in the need for the public safety power shutoffs "in the first place."

*See* Opposition, A.P. dkt. 16 at 16, lines 14-16.[1]

Plaintiff repeats this contention several times in his Opposition: "The Complaint does not allege that the PSPSs were not necessary and appropriate, or that CPUC's approval of its Wildfire Safety Plan was improper, only that the PSPSs would not have been necessary in the first place had PG&E not been negligent" (Opposition, A.P. dkt. 16 at 8, lines 5-7) and "this case is not about whether the shutoffs were appropriate or how

---

[1] As explained below, this concession is fatal, because without asserting negligence by PG&E in implementing the PSPSs, Plaintiff cannot invoke Pub. Util. Code 2106, which imposes liability on utilities for their actions or inactions causing loss, damages or injury.

-4-

PG&E handled them, it is about *why* they had to be done in the first place." *Id.* at 16, lines 15-16 (emphasis in original).

III. DISCUSSION

   A.  *The Utility's Authority to Implement The PSPS Events*

   Under governing California law, electric utilities that are regulated by the CPUC may shut off power in circumstances defined by the Public Utilities Code and the CPUC's decisions. *See* Cal. Pub. Util. Code §§ 399.2(a), 451. In April 2012, the CPUC promulgated de-energization guidelines that permitted San Diego Gas & Electric Company to shut off power when strong winds, heat events, and other conditions made a power shutoff "necessary to protect public safety." *See* Decision Granting Petition to Modify Decision 09-09-030 and Adopting Fire Safety Requirements for San Diego Gas & Electric Company, Decision 12-04-024, at 25 (Cal. P.U.C. Apr. 19, 2012) (the "Fire Safety Ruling") (A.P. dkt. 8-3 at ECF pg. 27).

   In July 2018, the CPUC adopted Resolution ESRB-8 extending the guidelines set forth in the Fire Safety Ruling to all investor-owned utilities, including PG&E. *See* Resolution Extending De-Energization Reasonableness, Notification, Mitigation, and Reporting Requirements in Decision 12-04-024 to All Electric Investor Owned Utilities ("Resolution ESRB-8"), 2018 WL 3584003, at *1 (Cal. P.U.C. July 12, 2018) (A.P. dkt. 8-5). The CPUC may review for reasonableness any decision by a utility to shut off power pursuant to the Fire Safety Ruling and Resolution ESRB-8. *Id.* at A.P. dkt. 8-5 at 5.

   Pursuant to its rulemaking authority, the CPUC established guidelines and protocols governing a decision by a utility to

-5-

conduct a PSPS. *See* Order Instituting Rulemaking to Examine Electric Utility De-Energization of Power Lines in Dangerous Conditions, 2018 WL 6830158 (Cal. P.U.C. Dec. 13, 2018) (A.P. dkt. 8-6). The CPUC may review any decision by a utility to shut off power for reasonableness. *Id.*

In September 2018, the California Legislature added several new provisions to the Public Utilities Code requiring California utilities to prepare and submit "Wildfire Mitigation Plans" to the CPUC. Cal. Pub. Util. Code § 8386(b). The Wildfire Mitigation Plans must contain, among other things, "[p]rotocols for . . . deenergizing portions of the electrical distribution system that consider the associated impacts on public safety." Cal. Pub. Util. Code § 8386(c)(6).

On February 6, 2019, PG&E filed its 2019 Wildfire Safety Plan, specifying factors that it considers in deciding whether to conduct a PSPS. The CPUC considered and ultimately approved PG&E's 2019 Wildfire Safety Plan. *See* CPUC's Decision on Pacific Gas and Electric Company's 2019 Wildfire Mitigation Plan Pursuant to Senate Bill 901 issued on June 4, 2019 (A.P. dkt. 8-9).

During the 2019 wildfire season, PG&E executed four PSPS events in October and one in November. On November 12, 2019, the CPUC ordered PG&E to show cause why it should not be sanctioned for its failure to communicate with its customers properly during these PSPS events. *See* Assigned Commissioner and Assigned Administrative Law Judge's Ruling Directing [PG&E] to

Case: 19-03061    Doc# 34    Filed: 03/30/20    Entered: 03/30/20 12:24:52    Page 6 of 11

Show Cause, Rulemaking 18-12-005 (Cal. P.U.C. Nov. 12, 2019) at A.P. dkt. 8-17. That investigation is ongoing.

The following day, the CPUC instituted a new investigation to determine whether California's utilities prioritized safety and complied with the CPUC's regulations and requirements with respect to their PSPS events in late 2019. *See* Order Instituting Investigation on the Commission's Own Motion on the Late 2019 Public Safety Power Shutoff Events, 2019 WL 6179011 (Cal. P.U.C. Nov. 13, 2019) at A.P. dkt. 8-16. That investigation is ongoing. The CPUC may take further action if it finds that violations of statutes, its decisions, or its general orders have been committed and if it finds that an action is necessary to enforce compliance. *Id.*

B. *CPUC's Exclusive Jurisdiction Over PSPS Events*

Both the Debtors and the CPUC assert that litigation and adjudication relating to PSPS events fall within the CPUC's exclusive regulatory powers. Section 1759 of the Public Utilities Code provides that no court of this state except the Supreme Court or court of appeal

> shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court.

Cal. Pub. Util. Code § 1759(a).

In *San Diego Gas & Electric Co. v. Superior Court ("Covalt")*, 13 Cal. 4th 893, 923, 926, 935 (1986), the California Supreme Court held that section 1759 bars the

-7-

assertion of a claim if (1) the CPUC has the authority to adopt a regulatory policy concerning the subject matter of the claim; (2) the CPUC has exercised that authority; and (3) litigation and adjudication of the claim would hinder or interfere with the relevant policy or policies adopted by the CPUC. In his opposition, Plaintiff concedes that the first two elements have been satisfied here, acknowledging that the CPUC "has authority to regulate and supervise the safety of public utility operations, including PSPSs" and "has exercised that authority in the realm of PSPSs[.]" *See* Opposition, A.P. dkt. 16 at 13, lines 17-20.

Plaintiff, however, disputes that the third *Covalt* factor is applicable, contending that this adversary proceeding would not hinder or interfere with CPUC's exercise of its regulatory authority. The CPUC disagrees, asserting that litigation of Plaintiff's claims would indeed "hinder and interfere with enforcement of [its] guidelines concerning public safety power shutoffs[.]" See CPUC Brief at A.P. dkt. 19, at 7. Even though Plaintiff does not specifically allege negligence by the Utility in executing the blackouts, but instead bases his liability claim on the theory that such PSPS events were caused by Utility's generalized failure to maintain its infrastructure, the CPUC contends that imposing liability on PG&E for damages arising out of 2019 PSPS events would effectively usurp the CPUC's regulatory to determine when shutoffs are appropriate for public safety and would further interfere with the CPUC's supervision of such PSPS events.

-8-

> The Complaint appears to rest on the theory that in light of the Utility's alleged generalized failure to maintain its infrastructure, any decision by the Utility to conduct a public safety power shutoff— in the recent past or future—necessarily gives rise to a claim against the Utility for negligence. <u>Judicial adoption of such a theory would hinder and interfere with the [CPUC's] considered policy to allow utilities to conduct public safety power shutoffs in the interests of public safety pursuant to guidelines established by the [CPUC]</u>.

CPUC Brief at A.P. dkt. 19 at 7-8 (emphasis added).

The court agrees that Plaintiff's assertion of damages arising out of a PSPS event is precluded by Public Utilities Code section 1759, even if his negligence claim is based on conduct pre-dating the PSPS events and possibly contributing to the necessity of the PSPS events. Any such claim interferes with the CPUC's exclusive regulatory authority over such shutoffs. As the court observed at the hearing on the MTD, Plaintiff has not alleged that Debtor exceeded the authority vested in it by the CPUC when it executed the PSPS events, and thus any damages incurred by parties as a result of these events must be addressed by the CPUC and not this court.

Finally, Plaintiff attempts to avoid application of Public Utilities Code section 1759 and *Covalt* by alleging that the PSPS events were necessitated by pre-existing conditions caused by the Utility's purported inadequate maintenance of equipment and inadequate attention to conditions that could cause wildfires. As the CPUC noted in its response, however, before the wildfires in October and November 2019, it had already exercised its authority to regulate the PSPSs by adopting its guidelines

-9-

governing the circumstances in which an investor-owned utility can conduct them. The CPUC continues to exercise that authority through ongoing rulemaking and investigations. Therefore, any claim for damages caused by PSPS events approved by the CPUC, even if based on in pre-existing events that may or may not have contributed to the necessity of the PSPS events, would interfere with the CPUC's policy-making decisions.

In any event, the proximate causal connection between the harms suffered by Plaintiff during the blackouts (loss of habitability of his dwelling, loss of cell phone connectivity) and the conditions pre-dating those blackouts is too remote to defeat the MTD, given that such PSPS events can be necessitated by high winds even when equipment is adequately maintained.

In conclusion, by asserting that inadequate maintenance led to the PSPSs, Plaintiff is usurping and interfering with the CPUC's authority in approving such PSPS events.[2] For that reason, the court is granting the MTD.

---

[2] In his opposition to the MTD, Plaintiff argues

> To say that just because the Commission provides regulatory guidance on PSPSs, PG&E cannot be liable for its negligence resulting in the need for a PSPS, is akin to saying that PG&E should not be liable for negligently causing the San Bruno explosion or the wildfires just because the Commission regulates aspects of PG&E's conduct related to those disasters. And it does not take that position.

First, the damages asserted by the victims of the San Bruno explosion and the various wildfires did not arise out of conduct approved by the CPUC in its regulatory capacity. Second, the CPUC did authorize the process by which PG&E conducted the PSPSs. Finally, the losses and damages asserted by the San Bruno

-10-

IV. CONCLUSION

The court is dismissing this adversary proceeding because it is preempted by Public Utilities Code section 1759. Counsel for Debtors should upload an order granting the MTD for the reasons set forth in this memorandum decision and file a separate proof of service indicating that compliance with B.L.R. 9021-1(c).

**END OF MEMORANDUM**

---

explosion victims and the wildfire victims were directly related and causally connected to the Utility's alleged misconduct.

-11-